**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Shelby Franklin, individually on behalf of herself and all others similarly situated, | x<br>:<br>:<br>: Case No.<br>: |
| Plaintiff, | :<br>: |
| v. | :<br>: |
| Stew Leonard's Inc., | : **CLASS ACTION COMPLAINT**<br>:<br>: <u>**JURY TRIAL DEMANDED**</u> |
| Defendant. | :<br>:<br>: |
| | x |

Plaintiff, Shelby Franklin (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

<u>**NATURE OF THE ACTION**</u>

1.    This action seeks to remedy the deceptive and misleading business practices of Stew Leonard's, Inc. (hereinafter "Defendant") with respect to the labeling and sales of fish products labeled as "red snapper" and "sockeye salmon" (hereinafter the "Products") throughout the State of New York.

2.    A recent report by the Office of the New York Attorney General ("OAG") demonstrates that a large percentage of Defendant's fish Products are mislabeled and thus not

1

what they are claimed to be.[1] Products labeled by Defendant as red snapper and sockeye salmon in fact are substituted with cheaper, less environmentally sustainable, or less healthy fish.[2]

3.    The OAG Seafood Fraud and Mislabeling Report concluded as follows:

> Something fishy is going on at supermarket seafood counters. Consumers think they are buying lemon sole, red snapper, or wild salmon, or any one of dozens of seafood options. But too often, they get something else entirely. They unknowingly take home a cheaper, less environmentally sustainable, or less healthy fish. It's a bait-and-switch, which cheats consumers and violates consumer protection laws.[3]

4.    Plaintiff and those similarly situated ("Class Members") relied on Defendant's labeling when purchasing the Products.  Plaintiff and Class Members paid a premium for the Products over and above other fish Products because they believed that they were red snapper, and not a different snapper fish of an inferior grade and quality.  Plaintiff and Class Members paid a premium for the Products over and above other fish Products because they believed that they were sockeye salmon, and not Coho salmon, a fish of inferior grade and quality.  Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations that they were red snapper and sockeye salmon, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

5.    Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350.  Defendant has been and continues to be unjustly enriched.  Defendant also violated the implied warranty of fitness for a particular purpose.

---

[1] "Fishy Business: Seafood Fraud and Mislabeling in New York State Supermarkets" Report from the Office of the New York State Attorney General, December 2018, annexed hereto as Exhibit A ("the "OAG Seafood Fraud and Mislabeling Report").

[2] *Id*. at p. 1; *see also id.* at p. B9.

[3] *Id*. at p. 1.

2

Accordingly, Plaintiff brings this action against Defendant on behalf of herself and Class
Members who purchased the Products in New York during the applicable statute of limitations
period (the "Class Period").

## FACTUAL BACKGROUND

6.      In 2015, the average American ate approximately 15.5 pounds of fish and other
seafood.[4]  Because such foods are high in protein, low in dietary fat, and rich in omega-three
fatty acids, the Food and Drug Administration ("FDA") recommends that eating 8 to 12 ounces
each week.[5]

7.      As explained by the OAG Seafood Fraud and Mislabeling Report, some varieties
of fish are in greater demand by consumers and consumers will pay a premium price for certain
species of fish.[6]  According to the Report, "Factors beyond flavor and texture play a role in
consumer choice, and consumers may favor certain species that they could not easily distinguish
by appearance or taste alone."[7]  Other seafood characteristics are also important to consumers,
including: market reputation (consumers will pay a premium "for seafood that is in high demand
and seen as a premium product"); nutritional and health differences ("[c]onsumers will select
particular seafood species over others because of differences they perceive in their safety,
nutrition, and wholesomeness"); and environmental sustainability concerns ("[e]co-conscious
consumers will select seafood species based on their environmental sustainability").[8]

---

[4] *Id.* at p. 2.
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id* at p. 2-3.

3

8.      From late 2017 through 2018, the OAG undertook a major government investigation in New York to look into seafood fraud at retail supermarket chains.  The OAG called the results "disturbing."[9]  The OAG purchased seafood at 155 locations across 29 supermarket brands, falling into nine categories. An academic laboratory then identified the species using DNA testing approved by the FDA.[10]  Five supermarket brands were responsible for a large share of the mislabeling, one of which was Stew Leonard's.[11]

9.      The OAG Seafood Fraud and Mislabeling Report described the mislabeling of certain species in New York supermarkets as "*rampant,*" particularly red snapper.[12]  Consumers who purchased this variety of fish were more likely to receive an entirely different fish.[13]  More than one in four (26.92%) seafood purchases was mislabeled, and about two-thirds of the supermarket brands reviewed had at least one instance of suspected mislabeling.[14]  Mislabeling in Long Island supermarkets was particularly high (40.63%).

10.     The OAG Seafood Fraud and Mislabeling Report also found that consumers were paying more for the mislabeled fish than they would have if they had known the truth, and were receiving an inferior product.[15]  Indeed, the mislabeled fish was substituted with fish that were typically cheaper, less desirable species than the desired species.[16]

---

[9] *Id.* at p. 1.
[10] *Id.*
[11] *Id.*
[12] *Id.* (emphasis in original).
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*

4

11.     Indeed, the Report noted that "[t]he wide price disparities between different fish species mean that substituting a cheaper or more obscure species for a more expensive or better known one can allow the seller to sell at a higher price – or to price the fish lower than a competitor selling the authentic product. In cases of mislabeling, the tendency of the substitute fish to be a cheaper species suggests that intentional misconduct in the supply chain may play a role."[17]

12.     In addition, consumers who purchased mislabeled fish products were exposed to the potential for greater chemical residue, a different nutritional profile, a less environmentally friendly species of fish, a less healthy species of fish, and fish with higher mercury levels when compared to the species of fish that they believed they were purchasing.[18]

13.     Defendant owns and operates a chain of six supermarkets (three in New York and three in Connecticut) which sell a wide variety of fish Products.[19]

14.     The OAG Seafood Fraud and Mislabeling Report found that Defendant's mislabeling of its fish Products was particularly prevalent and egregious.  In fact, 53.85% of Defendant's fish Product samples tested by the OAG were mislabeled.[20] This mislabeling rate was high enough to trigger further investigation by the OAG into Defendant's fish labeling practices.[21]

---

[17] *Id.* at p. 5.
[18] *Id.* at p. 1-3.
[19] http://www.stewleonards.com/
[20] *Id.* at  p. 12.
[21] *Id.*

5

15.     In particular, Defendant sold snapper fish as the more desirable and expensive red snapper and Coho salmon as the more desirable and expensive sockeye salmon.[22]

16.     In fact, Defendant's President and CEO admitted that Defendant had been importing snapper fish and labeling it as "red snapper" for the past two years.[23]

17.     The OAG Seafood Fraud and Mislabeling Report noted that snapper fish sold as red snapper often sells for half as much when properly labeled as another type of snapper and that some of these substitute snappers (e.g., lane snapper) had higher mercury levels or came from less sustainable fisheries than red snapper, leading to consumer safety and environmental sustainability issues.[24]

18.     In other words, Defendant routinely took advantage of consumers' preferences for certain fish species and characteristics by labeling and passing off low-demand, less healthy, and less environmentally friendly fish as more desirable, healthier, and more sustainable varieties of fish.

19.     Whether Defendant's labeling of the Products is deceptive is judged by whether it would deceive or mislead a reasonable person.

20.     Reasonable consumers expect fish labeled as red snapper or sockeye salmon to actually be that species of fish, as opposed to a less desirable and less healthy species of fish.

---

[22] *Id.* at p. B9.
[23] https://www.newsday.com/business/fish-in-ny-supermarkets-often-mislabeled-ag-s-investigation-finds-1.24575143
[24] OAG Seafood Fraud and Mislabeling Report, at p. 1.  *See also id.* at 20-22.

6

21.     Defendant's labeling of its fish Products is false, misleading, and deceptive because the Products are labeled as red snapper and sockeye salmon when, in fact, they are low-demand, less healthy, and less environmentally friendly species of fish.

22.     Consumers rely on label representations and information in making purchasing decisions.

23.     Indeed, as the OAG Seafood Fraud and Mislabeling Report noted, "Most consumers are not seafood experts. They interact with the global seafood chain exclusively at its final step: their neighborhood seafood counter or restaurant. To a far greater degree than for many other food products, consumers depend on the representations retailers make about the seafood for sale."[25]

24.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

25.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

26.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

---

[25] *Id.* at 6.

27.    In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products labeled as red snapper and sockeye salmon over other, less desirable, fish Products.

28.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they:

    a.  Paid a sum of money for Products that were not what Defendant represented;

    b.  Paid a premium price for Products that were not what Defendant represented;

    c.  Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant impliedly warranted;

    d.  Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented; and

    e.  Ingested a substance that was of a different quality than what Defendant promised.

29.    Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased, or would not have been willing to purchase the Products.

30.    Plaintiff and the Class Members paid for Products that were red snapper and sockeye salmon but received Products that were different, less desirable species of fish.  The Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

8

31.     Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of the varieties of fish that were accurately labeled.

32.     Plaintiff and the Class Members all paid money for the Products. However, Plaintiff and the Class Members did not obtain the full value of the labeled Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## JURISDICTION AND VENUE

33.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the State of New York, Defendant Stew Leonard's Inc. is a citizen of the State of Connecticut; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

34.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

35.     Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the State of New York. A substantial part of the events or omissions giving rise to the Plaintiff's and Class Members' claims occurred in this District.

## PARTIES

**Plaintiff**

36.    Plaintiff is an individual consumer who, at all times material hereto, was a resident of Nassau County, New York and a citizen of the State of New York.  Over the past several years, including multiple times in 2018, Plaintiff routinely purchased fish Products labeled as red snapper and sockeye salmon from the Stew Leonard's supermarkets in Farmingdale and East Meadow, New York.

33.    Plaintiff was willing to purchase and pay the amount that she did for the Products because she believed that they were accurately labeled.  Plaintiff would not have been willing to purchase or pay as much as she did for the Products if she had known that they were actually a different, lower quality and less desirable species of fish.

34.    Plaintiff would purchase the Products again if the labeling were changed so that the Product labels accurately reflected the species of fish being sold.

**Defendant**

35.    Defendant Stew Leonard's Inc. is a corporation with its principal place of business in Norwalk, Connecticut.  It was founded in 1969 and has grown into a more than $400 million business with six store locations in two states (New York and Connecticut) and over 2,000 employees.   In 2014, the Yonkers location alone produced over $100 million in revenue.[26]

---

[26] http://www.vault.com/company-profiles/retail/stew-leonards-llc/company-overview.aspx

36.    Defendant labels and sells the Products in three locations in New York (East Meadow, Yonkers, and Farmingdale).  Defendant created and/or authorized the false, misleading and deceptive labeling for the Products.

## CLASS ALLEGATIONS

37.    Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive labeling practices. Defendant's customers were routinely impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

38.    Plaintiff seeks certification of a class of individuals who purchased the Products in the State of New York at any time during the Class Period (the "Class").

39.    The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

40.    Numerosity: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

41.    Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

11

a. Whether Defendant is responsible for the conduct alleged herein which was routinely directed at consumers who purchased the Products;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in deceptive business practices with respect to the labeling of its Products;

c. Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning its Products;

d. Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public;

e. Whether Plaintiff and the Class are entitled to injunctive relief; and

f. Whether Plaintiff and the Class are entitled to money damages, and if so what is the proper measure.

42.     Typicality: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that Plaintiff's claims are based upon the same legal theories as those of the members of the Class, and because Plaintiff's grievances, like those of the members of the Class, all arise out of the same deceptive business practices and course of conduct of Defendant. Further, Plaintiff's damages arise out of a pattern of nearly identical and repetitive business practices conducted by Defendant.

43.     Adequacy: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent; her claims are common to all members of the Class and she has a strong interest in vindicating her rights; and

12

she has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action.  Plaintiff has no interests which conflict with those of the Class.  The Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel.  Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

44.    Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading labeling practices.

45.    Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

13

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all consumers who were induced by Defendant's pervasive false advertising to purchase their Products.

46. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

14

## INJUNCTIVE RELIEF

47.     Relief under Rule 23(b)(2) is also appropriate because Defendant's misleading conduct has been directed at all consumers in New York, and the conduct continues presently. Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire Class.  Certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the Class (i.e. Defendant has marketed its Products using the same misleading and deceptive labeling to all of the Class Members).  Any final injunctive relief or declaratory relief would benefit the entire Class as Defendant would be prevented from continuing its misleading and deceptive labeling practices and would be required to honestly disclose to consumers the nature of the contents of its Products.  Plaintiff would purchase the Products again if the labeling were changed so that the Product labels accurately reflected the species of fish being sold.

## FIRST CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 349
### (On Behalf of Plaintiff and All Class Members)

48.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

49.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

50.     The conduct of Defendant alleged herein constitutes recurring, unlawful deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the Class Members seek

monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting the Products.

51.    Defendant misleadingly, inaccurately, and deceptively presents its Products to consumers.

52.    Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as being species of fish which they are not — is misleading in a material way in that it, *inter alia*, induced Plaintiff and the Class Members to purchase and pay a premium for Defendant's Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

53.    Plaintiff and the Class Members have been injured inasmuch as they paid a premium for Products that were—contrary to Defendant's representations— of an inferior grade, quality, or type.  Accordingly, Plaintiff and the Class Members received less than what they bargained and/or paid for.

54.    Defendant's Products' labeling induced the Plaintiff and Class Members to buy Defendant's Products and to pay a premium price for them.

55.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the Class Members have been damaged thereby.

16

58.     As a result of Defendant's recurring, unlawful deceptive acts and practices, Plaintiff and the Class Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff and All Class Members)

59.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

60.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

61.     N.Y. Gen. Bus. Law § 350-a(1) provides, in part, as follows:

> The term "false advertising" means advertising including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

62.     Defendant's labeling contains untrue and materially misleading statements and omissions concerning Defendant's Products inasmuch as they misrepresent that the Products are of a certain grade, quality, or type when they are of an inferior grade, quality, or type.

17

63.     Plaintiff and the Class Members have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Products which were—contrary to Defendant's representations— of an inferior grade, quality, or type.

64.      Accordingly, Plaintiff and the Class Members received less than what they bargained and/or paid for.

65.     Defendant's advertising, packaging and Products' labeling induced Plaintiff and the Class Members to buy Defendant's Products.

65.     Defendant made its untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

66.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

67.     Defendant made the material misrepresentations and omissions described in this Complaint on the Products' labeling.

68.     Defendant's material misrepresentations and omissions were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations and omissions.

69.     As a result of Defendant's recurring, unlawful deceptive acts and practices, Plaintiff and Class Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT
**(On Behalf of Plaintiff and All Class Members)**

70.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71.     Defendant, through misleading representations and omissions, enticed Plaintiff and Class Members to purchase the Products.

72.     Plaintiff and the Class Members conferred a benefit on Defendant by purchasing the Products.

73.     By its wrongful acts, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

74.     Defendant benefitted financially from the revenues and other compensation tied to the sale of the Products, which was unjust in light of Defendant's wrongful conduct as described in this Complaint.

75.     Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff and the Class as the result of its deceptive marketing and advertising practices.

76.     Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and the Class Members is unjust and inequitable, Plaintiff seeks restitution from, and an order from the Court disgorging all profits, benefits and other compensation obtained by, Defendant due to its wrongful conduct.

**FOURTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**
**(On Behalf of Plaintiff and All Class Members)**

77.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78.     Defendant knew or had reason to know that Plaintiff and the other Class Members were buying their Products with the specific purpose of buying red snapper and sockeye salmon.

79.     Plaintiff and the other Class Members relied on the Defendant in selecting their Products to fit their specific intended use.

80.     Defendant held themselves out as having particular knowledge of the Products.

81.     Plaintiff's and Class Members' reliance on Defendant in selecting Defendant's Products to fit their particular purpose was reasonable given Defendant's claims and representations in its labeling concerning the species of the fish in the Products.

82.      Plaintiff and the other Class Members' reliance on Defendant in selecting Defendant's Products to fit their particular use was reasonable given Defendant's particular knowledge of the Products it sells.

83.      As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for the Defendant's Products, together with interest thereon from the date of purchase.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its practices and to comply with applicable consumer protection statutes and all other applicable laws and statutes;

(c) Awarding monetary damages, including treble damages;

(d) Awarding punitive damages;

(e) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(f) Granting such other and further relief as the Court may deem just and proper.

Dated:  December 19, 2018

**THE SULTZER LAW GROUP P.C.**

By: ___/s/ Jason P. Sultzer
Jason P. Sultzer, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

21

**THE SULTZER LAW GROUP P.C.**
Janine Pollack, Esq.
Jeremy Francis, Esq.
351 West 54th Street, Suite 1C
New York, New York 10019
Tel: (212) 969-7810
Fax: (888) 749-7747
pollackj@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com

**LEEDS BROWN LAW P.C.**

By: /s/ Jeffrey Brown
Jeffrey Brown, Esq.
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel: (516) 873-9550
jbrown@leedsbrownlaw.com

*Counsel for Plaintiff and the Class*